IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ABIRA MEDICAL LABORATORIES, LLC *d/b/a* GENESIS DIAGNOSTICS | : : : : | CIVIL ACTION No. 23-5057 |
| v. | : : | |
| CENTENE CORPORATION, et al. | : | |

**MEMORANDUM**

**Judge Juan R. Sánchez**                                                                                                                          **August 13, 2024**

Plaintiff Abira Medical Laboratories, LLC, doing business as Genesis Diagnostics ("Genesis"), brings this breach-of-contract suit against Defendants Magnolia Health Plan Inc. and Centene Corporation ("the Insurers") for refusing to pay for laboratory testing services. The Insurers move to dismiss the Complaint for lack of personal jurisdiction and failure to state a claim on which relief can be granted under Federal Rules of Civil Procedure 12(b)(2) and 12(b)(6). Because Magnolia did not purposefully direct its activities towards Pennsylvania, the motion to dismiss will be granted without prejudice as to Magnolia for lack of personal jurisdiction. As to Centene, the motion to dismiss will be granted without prejudice for all state law claims dependent on a contract because Genesis fails to allege the existence of any contract. The motion to dismiss will also be granted with prejudice as to the claims under the Families First Coronavirus Response Act ("FFCRA") and the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act") because the Acts do not provide an express or implied private right of action. Finally, the motion to dismiss will be denied as to the state law claim for quantum meruit and unjust enrichment, because Genesis has plausibly alleged it conferred an appreciated benefit on the Insurers which would be inequitable for the Insurers to retain without payment.

**BACKGROUND**

Genesis is a New Jersey limited liability company that performs various laboratory testing services. Compl. ¶¶ 1, 6, ECF No. 1. Its principal laboratory is located in Langhorne, Pennsylvania. *Id.* ¶ 7. Magnolia, a health insurer, is incorporated in Mississippi and has its principal place of business in Missouri. *Id.* ¶ 8. Centene, a healthcare provider, is incorporated in Delaware and has its principal place of business in Missouri. *Id.* ¶ 9.

From September 2016 through March 2021, Genesis performed laboratory testing in its Pennsylvania laboratory for patients insured by Magnolia and Centene. *Id.* ¶¶ 1, 31. The tests were ordered by the patients or their physicians. *Id.* ¶ 1. After Genesis tested the patient samples, it submitted claims to the Insurers. *Id.* ¶ 29. During this period, the Insurers "intermittent[ly]" communicated with Genesis in response to its claims. *Id.* ¶ 32. But the Insurers regularly refused to pay or underpaid Genesis' claims. *Id.* ¶ 29.

On December 20, 2023, Genesis filed suit against the Insurers for refusing to pay for testing services on more than 1,305 claims. *Id.* ¶¶ 5, 39. In its eight-count Complaint, Genesis brings claims for breach of contract (Count I), breach of implied covenant of good faith and fair dealing (Count II), fraudulent misrepresentation (Count III), negligent misrepresentation (Count IV), promissory estoppel (Count V), equitable estoppel (Count VI), quantum meruit and unjust enrichment (Count VII), and violations of the FFCRA and CARES Act (Count VIII). *Id.* ¶¶ 58-107. The Insurers now move to dismiss the Complaint.

**STANDARDS OF REVIEW**

To survive a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the plaintiff bears the burden of establishing the Court's jurisdiction over the moving defendants. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). "[W]hen the court does not hold an evidentiary hearing on the motion to dismiss, the plaintiff need only

establish a prima facie case of personal jurisdiction and the plaintiff is entitled to have its allegations taken as true and all factual disputes drawn in its favor." *Id*. (citations omitted). "Unlike a Rule 12(b)(6) motion, the Court's review of a Rule 12(b)(2) motion is not limited to the face of the pleadings and the Court may rely on sworn affidavits submitted by the parties or other competent evidence that supports jurisdiction." *Lutz v. Rakuten, Inc.*, 376 F. Supp. 3d 455, 463 (E.D. Pa. 2019) (citing *Patterson by Patterson v. F.B.I.*, 893 F. 2d 595, 603-04 (3d Cir. 1990)).

Generally, "[a] federal district court may assert personal jurisdiction over a nonresident of the state in which the court sits to the extent authorized by the law of that state." *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 436 (3d Cir. 1987) (citing Fed. R. Civ. P. 4(e)). Pennsylvania's long-arm statute authorizes the exercise of jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with this Commonwealth allowed under the Constitution." 42 Pa. C.S. § 5322(b); *see also O'Connor v. Sandy Lane Hotel*, 496 F.3d 312, 316 (3d Cir. 2007). The Court thus must "ask whether, under the Due Process Clause, the defendant has certain minimum contacts with . . . [Pennsylvania] such that the maintenance of this suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316 (citation and internal quotation marks omitted).

To withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A complaint "does not need detailed factual allegations" if it contains something "more than labels and conclusions." *Twombly*, 550 U.S. at 555. But the plausibility standard "require[s] a pleading to show more than a sheer possibility that a defendant

has acted unlawfully." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citation omitted). "A facially plausible claim is one that permits a reasonable inference that the defendant is liable for the misconduct alleged." *Doe v. Univ. of the Scis.*, 961 F.3d 203, 208 (3d Cir. 2020) (citing *Iqbal*, 556 U.S. at 678). In evaluating a motion to dismiss, the Court must "accept as true all allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the non-moving party." *Rocks v. City of Phila.*, 868 F.2d 644, 645 (3d Cir. 1989).

**DISCUSSION**

The Insurers move to dismiss Genesis' Complaint in full, arguing (1) the Court lacks personal jurisdiction over Magnolia, and (2) all claims against both Magnolia and Centene should be dismissed "because they lack factual allegations to show Plaintiff's standing or entitlement to any relief." Br. Supp. Defs.' Mot. Dismiss 5-6, ECF No. 14. The Court considers each argument in turn.

As an initial matter, this Court lacks personal jurisdiction over Magnolia. There are two types of personal jurisdiction: general and specific. *O'Connor*, 496 F.3d at 317. General jurisdiction exists when a corporation's "affiliations with the State are so continuous and systematic as to render [it] essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011) (citation and internal quotations omitted). These affiliations include the corporation's place of incorporation and principal place of business. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). General jurisdiction may also exist in the "exceptional case" where "a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State." *Id*. at 139 n.19. Pennsylvania is not Magnolia's place of

incorporation or principal place of business. *See* Compl. ¶ 8. And Genesis does not allege Magnolia's operations in Pennsylvania are "so substantial" as to render it at home in this state.[1] *Daimler*, 571 U.S at 139 n.19. The Court thus lacks general jurisdiction over Magnolia.

Genesis instead argues this Court has specific jurisdiction over Magnolia. Pl.'s Resp. Opp'n 8-10. In determining whether specific jurisdiction exists, courts must make a three-part inquiry:

> First, the defendant must have purposefully directed [its] activities at the forum. Second, the litigation must arise out of or relate to at least one of those activities. And third, if the prior two requirements are met, a court may consider whether the exercise of jurisdiction otherwise comport[s] with fair play and substantial justice.

*O'Connor*, 496 F.3d at 317 (citations and internal quotation marks omitted). "The contacts must be the defendant's own choice and not random, isolated, or fortuitous." *Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (citation and internal quotation marks omitted).

The first step of the specific jurisdiction inquiry asks whether the defendant has "purposefully avail[ed] itself of the privilege of conducting activities within the forum." *O'Connor*, 496 F.3d at 317 (citation omitted). Physical entrance is not required, but there must be a "deliberate targeting of the forum." *Id*. "[C]ontacts with a state's citizens that take place outside the state are not purposeful contacts with the state itself." *Id*. (citation omitted). Thus, "unilateral activity of another party or a third person is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum State to justify an assertion of jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 417 (1984) (citation omitted).

---

[1] Genesis does not dispute the lack of general jurisdiction. *See* Pl.'s Resp. Opp'n 8-10, ECF No. 18.

5

Genesis' argument fails at the first step because Magnolia did not purposefully direct its activities towards Pennsylvania. Genesis argues Magnolia's contacts with Pennsylvania can be grouped into three categories: (1) communication with Genesis over more than five years; (2) collection of samples before sending them to Genesis' Pennsylvania laboratory for testing; and (3) the resulting testing and invoices generated by Genesis and forwarded to Magnolia. Pl.'s Resp. Opp'n 8. But none of these contacts demonstrate the deliberate targeting necessary to establish specific jurisdiction.

Beginning with Magnolia's communications with Genesis, "informational communications in furtherance of [a contract between a resident and a nonresident] does not establish the purposeful activity necessary for a valid assertion of personal jurisdiction over [the nonresident defendant]." *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prod. Co.*, 75 F.3d 147, 152 (3d Cir. 1996) (citation omitted). The Complaint describes Magnolia's communications as "intermittent" and primarily occurring in response to Genesis' forwarded invoices. Compl. ¶ 32. This communication is not the type of deliberate targeting required to establish specific jurisdiction. *See id.*; *see also Abira Med. Labs., LLC v. Anthem Blue Cross Blue Shield Mo.*, Civ. No. 23-4940, 2024 WL 1704981, at *4 (E.D. Pa. Apr. 19, 2024).

As to the collection and submission of testing samples to Genesis' laboratory, no factual allegations suggest Magnolia was involved in these activities. Instead, Genesis alleges the tests were ordered by the patients or their physicians. Compl. ¶ 1. In its response, Genesis further argues the "agents/representatives" of the Insurers—such as the physicians—voluntarily decided to send the samples to Genesis. Pl.'s Resp. Opp'n 8. Genesis conclusorily alleges these third parties acted as "agents" of Magnolia, which in turned subjected Magnolia to this Court's jurisdiction. *Id.* at 8-9. But the Complaint does not contain factual allegations which would establish an agency

6

relationship between Magnolia and the third-party patients and doctors. *See Reichard v. United of Omaha Life Ins. Co.*, 331 F. Supp. 3d 435, 472 (E.D. Pa. 2018) ("In order to establish the existence of an agency relationship, a party must show that: (1) there was a manifestation by the principal that the agent would act for it; (2) the agent accepted such an undertaking; and (3) the principal retained control of the endeavor." (citation omitted)). In other words, third parties sent the samples to Pennsylvania—not Magnolia. Such unilateral third-party activity is "not an appropriate consideration" when determining specific jurisdiction. *Helicopteros*, 466 U.S. at 417. Thus, this second group of communications also does not establish specific jurisdiction.

The third group of contacts, consisting of the testing and invoices generated by Genesis, is similarly insufficient to establish specific jurisdiction. This activity is entirely attributable to Genesis. Because Genesis' "unilateral activity . . . is not an appropriate consideration when determining whether a defendant has sufficient contacts," the testing and generated invoices cannot provide a basis for specific jurisdiction. *Id*. Accordingly, there is no basis for this Court to exercise personal jurisdiction over Magnolia, and its motion to dismiss will be granted without prejudice.[2]

The Insurers also move to dismiss all state law claims pursuant to Federal Rule of Civil Procedure 12(b)(6), as Genesis has not alleged the existence of any contract.[3] Br. Supp. Defs.' Mot

---

[2] This conclusion corresponds with a series of similar actions brought by Genesis in which courts held Genesis had not established personal jurisdiction over the defendants. *See Abira Med. Lab., LLC v. Anthem Health Plans of Va., Inc.*, Civ. No. 23-4896, 2024 WL 3015521 (E.D. Pa. June 14, 2024); *Abira Med. Labs., LLC v. Anthem Blue Cross Blue Shield Mo.*, Civ. No. 23-4940, 2024 WL 1704981 (E.D. Pa. Apr. 19, 2024); *Abira Med. Labs. LLC v. Molina Healthcare of Fla., Inc.*, Civ. No. 24-506, 2024 WL 1182855 (E.D. Pa. Mar. 19, 2024).

[3] The Insurers also argue the Complaint should be dismissed because it is an impermissible "shotgun pleading" which "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which of the acts or omissions[.]" Br. Supp. Defs.' Mot. Dismiss 7 (quoting *Fuhrman v. Mawyer*, Civ. No. 21-2024, 2023 WL 5672314, at *4 (M.D. Pa. Sept. 1, 2023)). The Court disagrees. The shotgun pleading cases the Insurers cite involved markedly different complaints which clearly failed to provide adequate notice to those

Dismiss 7-8. The Insurers further argue that even if any contracts existed, Genesis has not adequately alleged it (1) "received a valid assignment of benefits from anyone," and (2) acted as an "authorized representative." *Id*. at 8, 10.

Genesis brings state law claims for breach of contract (Count I), breach of the implied covenant of good faith and fair dealing (Count II), fraudulent misrepresentation (Count III), negligent misrepresentation (Count IV), promissory estoppel (Count V), equitable estoppel (Count VI), and quantum meruit and unjust enrichment (Count VII). *See* Compl. ¶¶ 58-102. It is self-evident that Counts I through VI depend on the existence of a contract.[4] For example, in Pennsylvania, a breach of contract action requires "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract[,] and (3) resultant damages." *Ware v. Rodale Press, Inc.*, 322 F.3d 218, 225 (3d Cir. 2003) (quoting *CoreStates Bank, N.A. v. Cutillo*, 723 A.2d 1053, 1058 (1999)).

Genesis has not pled the existence of any contract with specific factual allegations. The Complaint refers to generic "insurance contracts" and "Benefits clauses or provisions" which

---

defendants of the claims against them. *See, e.g.*, *Fuhrman*, 2023 WL 5672314, at *14 (concluding a 297-page complaint against 10 defendants was a shotgun pleading); *Bartol v. Barrowclough*, 251 F. Supp. 3d 855, 860 (E.D. Pa. 2017) (reaching the same conclusion for a 54-page complaint against seven defendants). In contrast, the Complaint here is 21 pages and names two defendants. Although the Complaint refers to Magnolia and Centene together as "Defendants," the Court concludes both Insurer Defendants have been provided adequate notice of the allegations against them.

[4] Meanwhile, a claim for quantum meruit and unjust enrichment is "inapplicable when the relationship between the parties is founded on a written agreement or express contract." *Benefit Tr. Life Ins. Co. v. Union Nat. Bank of Pittsburgh*, 776 F.2d 1174, 1177 (3d Cir. 1985) (citation omitted). Count VII thus does not depend on the existence of a contract and will be discussed separately.

allegedly required the Insurers to pay Genesis.[5] Compl. ¶ 26. Genesis also alleges it received a valid assignment of benefits and was made an "authorized representative" pursuant to 29 C.F.R. § 2560.503–1(b)(4), "as evidenced by [the patients] providing their authorization and/or insurance information" to Genesis. *Id*. ¶¶ 26-28, 36-37. But the insured patients at issue are only referred to generally and not identified in any meaningful way, such as by approximate quantity.[6] *See, e.g.*, *id*. ¶¶ 20, 27-28 (alleging "numerous insureds/claimants located throughout the United States" designated Genesis as their assignee and authorized representative, with no other details). In sum, Genesis only alleges vague and generic contract details which allegedly applied to an unspecified and indistinguishable group of patients. Such allegations are too broad on their face to establish the existence of any contract, including its essential terms. *See Abira Med. Labs., LLC v. Kaiser Found. Health Plan of Mid-Atl. States, Inc.*, Civ. No. 24-0759, 2024 WL 2188911, at *2 (E.D. Pa. May 15, 2024) (finding the existence of a contract after Genesis alleged "each of roughly 500" patient samples "came with a requisition that included a transfer of the right to be paid by [plaintiff] for the testing" and "attached to its complaint a spreadsheet alleging the date, amount of money billed, and accession number (unique identifier) for each test").

In its response, Genesis attempts to remedy the Complaint's vague and conclusory allegations by offering new allegations based on "requisition of services" forms. Pl.'s Resp. Opp'n 3-4, 12. In support thereof, Genesis attached a declaration from a Genesis vice president and a

---

[5] Genesis refers to its "usual and customary business practice" of collecting a patient's signature to authorize testing and claims to the patient's insurance company. Compl. ¶ 38. But Genesis does not provide any factual allegations concerning whether or how signatures were obtained in this case. The Court assuming Genesis collected signatures in an unknown way is not a sufficient basis to infer the Insurers are "liable for the misconduct alleged." *Doe*, 961 F.3d at 208 (citation omitted).

[6] The Complaint states over 1,305 claims are at issue, but it is unclear whether each claim represents one or multiple patients. *See* Compl. ¶ 39.

9

spreadsheet with the date, billed amount, and unique ID for each test. *See* ECF Nos. 18-1, 18-2. But it is "axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Olson v. Ako*, 724 F. App'x 160, 166 (3d Cir. 2018) (quoting *Com. of Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988)). The word "requisition" is nowhere in the Complaint, and Genesis did not attach the declaration or the spreadsheet to the pleadings. Because the Complaint does not allege the existence of a contract, all claims dependent on a contract necessarily fail.[7] *See* Compl. ¶¶ 59, 68, 72, 78, 84, 91. Accordingly, Counts I, II, III, IV, V, and VI will be dismissed without prejudice.

As to Count VII, a state law claim for quantum meruit and unjust enrichment, the Insurers argue Genesis has not sufficiently alleged the claim's essential elements. Br. Supp. Defs.' Mot Dismiss 18. The Court disagrees. The Pennsylvania Supreme Court has explained the relationship between the quantum meruit remedy and an unjust enrichment claim:

> A claim for damages in *quantum meruit* is fundamentally an equitable claim of unjust enrichment in which the party seeking recovery must demonstrate: (1) [the] benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.

*Meyer, Darragh, Buckler, Bebenek & Eck, P.L.L.C. v. L. Firm of Malone Middleman, P.C.*, 179 A.3d 1093, 1102 (2018) (citation omitted). The focus is "whether the defendant has been unjustly enriched." *Id*. (citation omitted). As to the third element, the required inequity may be

---

[7] Genesis correctly acknowledges Count II, alleging a breach of the implied covenant of good faith and fair dealing, is "[i]mplied in all contracts." Compl. ¶ 68; *see also Hanaway v. Parkesburg Grp., LP*, 132 A.3d 461, 471 (2015), *aff'd in part, rev'd in part on other grounds*, 168 A.3d 146 (Pa. 2017) ("The implied covenant of good faith and fair dealing attaches to existing contractual obligations; it does not add new contractual duties."). And Counts III, IV, V, and VI allege fraudulent misrepresentation, negligent misrepresentation, promissory estoppel, and equitable estoppel based on the "Benefits clause of the insurance contracts." Compl. ¶¶ 72, 78, 84, 91.

demonstrated by allegations of the enriched party misleading the conferring party in some way. *See D.A. Hill Co. v. Clevetrust Realty Invs.*, 573 A.2d 1005, 1009 (1990) ("[R]etention of the benefit without paying any compensation . . . would not be unjust if the [enriched party] did not contract directly with or mislead the [conferring party].").

Genesis has sufficiently pled a quantum meruit and unjust enrichment claim. It alleges it conferred benefits which appreciated on the Insurers by performing laboratory testing for its insured members from September 2016 through March 2021. Compl. ¶¶ 1, 31. Genesis further claims the Insurers misled it by making "misrepresentations and false promises" regarding "paying for their laboratory testing, and knew that such would not be honored." *Id*. ¶ 44. These allegations are enough to sufficiently allege a quantum meruit and unjust enrichment claim at this stage. *See, e.g.*, *Kaiser*, 2024 WL 2188911, at *8-9 (concluding same). The motion to dismiss is therefore denied as to Count VII.

The last claim the Insurers move to dismiss (Count VIII) alleges violations of the FFCRA and the CARES Act for failing to reimburse Genesis. *Id*. ¶¶ 103-07. The Insurers argue these statutes do not contain a private right of action, and thus do not entitle Genesis to relief.[8] Br. Supp. Defs.' Mot. Dismiss 19-20. Indeed, several courts have now held the FFCRA and the CARES Act

---

[8] In response to the ample caselaw concluding there is no private right of action, Genesis vaguely asserts the Complaint contains "additional factual and legal arguments" and emphasizes only one Court of Appeals has held there is no such private right. Pl.'s Resp. Opp'n 24. But Genesis does not clarify *which* arguments in the Complaint are relevant. And rather than argue the issue on the substantive merits, Genesis merely notes there is no binding authority on this matter. Without more, it is unclear how multiple courts finding no private right of action exists should persuade this Court to conclude the opposite.

Indeed, Genesis' primary counterargument is that it is entitled to recover for testing services pursuant to the Employment Retirement Income Security Act of 1974 ("ERISA"), § 502(a). *Id.* at 23. But Genesis has not pled an ERISA claim. Even if it had, Genesis would run into the same problem leading to dismissal of the state law claims: it has not alleged the existence of any contract.

do not create an express or implied private right of action against an insurer. *See, e.g.*, *Abira Med. Labs., LLC v. State Farm Mut. Auto. Ins. Co.*, Civ. No. 23-3866, 2024 WL 3199835, at *5 (D.N.J. June 26, 2024) (collecting cases); *Genesis Labs. Mgmt. LLC v. United Health Grp., Inc.*, Civ. No. 21-12057, 2023 WL 2387400, at *3 (D.N.J. Mar. 6, 2023) (same); *Saloojas, Inc. v. Aetna Health of Cal., Inc.*, 80 F.4th 1011, 1016 (9th Cir. 2023) (concluding there is no private right of action under the CARES Act). As these other courts have found, "there is nothing in the text or structure of those acts suggesting that Congress intended to afford a privately enforceable remedy[.]" *Genesis Labs. Mgmt.*, 2023 WL 2387400, at *3 (citation omitted). The Court therefore agrees with other federal courts and concludes the FFCRA and the CARES Act do not provide an express or implied private right of action.

Under Federal Rule of Civil Procedure 15(a)(2), the Court "should freely give leave" to amend "when justice so requires." But amendment is not permitted where it would be futile, such that there are no facts which could be added to the complaint that would properly state a claim. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Because the FFCRA and the CARES Act do not create a private right of action, Count VIII will be dismissed with prejudice, as amendment would be futile. As to Defendant Magnolia, the motion to dismiss will be granted without prejudice for lack of personal jurisdiction. And as to Defendant Centene, because it is possible that pleading additional factual allegations could support Counts I through VI, those counts dependent on a contract will be dismissed without prejudice. The motion to dismiss is denied as to Count VII.

An appropriate Order follows.

BY THE COURT:

/s/ Juan R. Sánchez
Juan R. Sánchez, J.